## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MICHIGAN

SALIM ALI, Individually, SILVER DAYS, INC., BHIKHABHAI PATEL, Individually, SHRIJEE INVESTMENT, INC. and THE DETROIT DUNKIN' DONUTS FRANCHISEE ASSOCIATION, LLC, on Behalf of all Detroit Market Dunkin' Donuts and Baskin-Robbins Franchisees,

      Plaintiffs,

v.

DUNKIN' DONUTS FRANCHISED RESTAURANTS, LLC, Successor in Interest to Dunkin' Donuts Incorporated and BASKIN-ROBBINS FRANCHISED SHOPS, LLC, Successor in Interest to BASKIN-ROBBINS USA CO.,

      Defendants.

Case No.
Hon.

**VERIFIED COMPLAINT**

Plaintiffs SALIM ALI, individually, SILVER DAYS, INC., a Michigan corporation, BHIKHABHAI PATEL, individually, SHRIJEE INVESTMENT, INC., a Michigan corporation, and the DETROIT DUNKIN' DONUTS FRANCHISEE ASSOCIATION, a Michigan limited liability company, on behalf of all Dunkin' Donuts and Baskin-Robbins franchisees in the Detroit Market (hereinafter referred to as "Ali," "SDI," "Patel," "SII," "DDFA" or "Plaintiffs," as appropriate), by and through their attorneys MARKS & KLEIN, LLP and THAV, GROSS, STEINWAY & BENNETT, P.C.., hereby submit this Complaint against DUNKIN' DONUTS FRANCHISED RESTAURANTS, LLC ("DDFR") and BASKIN-ROBBINS FRANCHISED SHOPS, LLC ("Baskin") (hereinafter DDRR and Baskin are collectively "Dunkin").

## THE PARTIES

1.      Plaintiff Salim Ali is a resident of the State of Michigan and has been a Dunkin' Donuts franchisee for nearly twenty four (24) years.

2.      Mr. Ali owns and operates a Dunkin' Donuts franchise store in Lincoln Park, Michigan (PC #304385), and Dunkin' Donuts/Baskin-Robbins combination franchise stores in Canton, Michigan (PC# 306041) and Dearborn, Michigan (PC #340300), respectively.  Mr. Ali recently received a Default Notice for Non-Payment and a Notice of Termination.

3.      Plaintiff Silver Days, Inc. ("SDI") is a Michigan Corporation, through which Plaintiff Ali owns and operates his Dearborn Dunkin' franchise store.

4.      Plaintiff Bhikhabhai Patel is a resident of the State of Michigan and has been a Dunkin' Donuts franchisee for nearly ten (10) years.

5.      Mr. Patel owns and operates a Dunkin' Donuts franchise store in Warren, Michigan (PC #336552), a Dunkin' Donuts/Baskin-Robbins combination franchise store in Detroit, Michigan (PC #308682), a Dunkin' Donuts/Baskin-Robbins combination franchise store in Southfield, Michigan (PC #336549), a Dunkin' Donuts franchise store in Southfield, Michigan (PC #304095), and a Dunkin' Donuts franchise store in Toledo, Ohio (PC #302349).

6.      Plaintiff Shrijee Investment, Inc. ("SII") is a Michigan Corporation, through which Plaintiff Patel owns and operates his Southfield Dunkin' franchise store (PC #336549).

7.      The Detroit Dunkin Donut Franchisee Association, LLC is a limited liability company formed under the laws of the State of Michigan.

8.     The DDFA is comprised of approximately eighteen (18) Dunkin' Donuts and Baskin-Robbins franchisees that own and operate approximately forty-five to forty-eight (45-48) franchise stores in the Detroit Market.

9.     The primary purpose of the DDFA is to serve as the official voice of all Dunkin' and Baskin' franchisees in the Detroit Market, with its central focus on improving the Dunkin' brand and brand awareness.

10.     Upon information and belief, Defendant DDFR is a Delaware limited liability company, with its principal place of business located at 130 Royall Street Canton, Massachusetts 02021.

11.     Upon information and belief, Defendant DDFR is registered to do business in the state of Michigan.

12.     Upon information and belief, Defendant Baskin is a Delaware limited liability company, with its principal place of business located at 130 Royall Street Canton, Massachusetts 02021.

13.     Upon information and belief, Defendant Baskin is registered to do business in the state of Michigan.

## JURISDICTIONAL STATEMENT

14.     Jurisdiction is based on 28 USC Section 1332 as a diversity action between citizens of different states and the amount in controversy is in excess of $75,000.00.

## VENUE

15.     Venue is based upon 28 USC Section 1391(a) and is proper in this District because it is a diversity action where a substantial part of the events or omissions giving

rise to the claim occurred in this District and is a judicial district in which Defendant is subject to personal jurisdiction.

## BACKGROUND

16.     This action is predicated on Dunkin's illicit business practices which have caused Plaintiffs Ali, Patel and each of the Dunkin' franchisees within the Detroit Market to sustain damages.

17.     Dunkin's illicit conduct includes, without limitation: (i) unlawfully withholding consent permitting Plaintiffs Ali and Patel to transfer ownership of their respective stores, and (ii)  unlawfully prohibiting every franchisee in the Detroit Market from expanding their Dunkin' networks.

## I.  GENERAL ALLEGATIONS

### The Dunkin' Donuts System

18.     Dunkin' issues franchises to individuals throughout the United States and in various foreign countries. Currently, there are approximately 5,700 franchised shops operating in the United States.

19.     Dunkin' grants its franchisees the right to, among other things, sell proprietary food products, including donuts, coffee, bagels, muffins, soups, sandwiches and other beverages utilizing a specially designed building or facility with specially developed equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, distribution and delivery methods, specifications and proprietary marks and information (the "Dunkin' Donuts System").

### The Franchise Relationship

20.    The franchise relationship existing between Dunkin' and its franchisees is governed by the franchise agreement.

21.    Pursuant to the express terms of Dunkin's franchise agreement, any disputes arising between the parties to the agreement are governed by the law of the Commonwealth of Massachusetts.

22.    Upon information and belief, any and all decisions regarding the relationship between the franchisor and its franchisees are made in, or vetted through Dunkin's corporate headquarters which are located in the state of Massachusetts.

23.    Upon information and belief, such decisions include the general effectuation of Dunkin's expansion plan, the determination to establish new Dunkin' locations, and all decisions concerning the establishment and enforcement of Dunkin's operational protocols.

24.    Notwithstanding limited franchisee autonomy in a few areas, the Dunkin' franchise relationship is characterized by near absolute franchisor power and control over all franchisee activities.

25.    From the beginning of the franchise relationship, Dunkin' makes a number of important decisions that affect the franchisee's economic life, all of which are made in Dunkin's sole discretion.

26.    Each of the franchisees in the Detroit Market, including Plaintiffs Ali and Patel, have invested millions of dollars in franchise purchase fees, capital improvements, equipment purchases, architect fees, closing fees and other required major expenditures.

### The Franchise Agreements

27.     In or about August 1984 Plaintiff Ali entered into a written agreement with Dunkin' Donuts, Inc. ("DDI"), pursuant to which Ali would own and operate a Dunkin' franchise store at 22431 Michigan Avenue in Dearborn, Michigan for nineteen (19) years.

28.     In 2004, Ali's Dearborn store was relocated to 24325 Michigan Avenue and became a Dunkin' Donut/ Baskin-Robbins combination franchise.

29.     In or about September 1997, Plaintiff Ali entered into a written agreement with DDI pursuant to which Ali would own and operate a Dunkin' franchise store located at 2011 Southfield Road in Lincoln Park, Michigan.

30.     In or about August 2004, Plaintiff Ali entered into a written agreement with DDI, pursuant to which Ali would own and operate a combination Dunkin' Donuts and Baskin Robbins franchisee and operate a store located at 41511 Ford Road in Canton, Michigan.

31.     In or about 2001, Plaintiff Patel entered into a written agreement with DDI, pursuant to which Patel would own and operate a combination Dunkin' Donuts and Baskin-Robbins franchise store (PC #336549) located at 29285 Southfield Road, Southfield, Michigan 48076.

32.     In or about 2001, Plaintiff Patel entered into a written agreement with DDI, pursuant to which Patel would own and operate a combination Dunkin' Donuts and Baskin-Robbins franchise store (PC #336552) located at 27460 Van Dyke Avenue, Warren, Michigan 48093.

33.     In or about 2002, Plaintiff Patel entered into a written agreement with DDI, pursuant to which Patel would own and operate a combination Dunkin' Donuts and Baskin-Robbins franchise store (PC #308682) located at 19125 Telegraph Road, Detroit, Michigan 48219.

34.     In or about 1995, Plaintiff Patel entered into a written agreement with DDI, pursuant to which Patel would own and operate a Dunkin' Donuts franchise store (PC #304095) located at 28799 Northwestern Highway, Southfield, Michigan 48034.

35.     In or about 1999, Plaintiff Patel entered into a written agreement with DDI, pursuant to which Patel would own and operate a Dunkin' Donuts franchise store (PC #302349) located at 2709 W. Central Avenue, Toledo, Ohio 43606.

## Dunkin's Detroit Market Expansion

36.     Dunkin' has undertaken a well-publicized, rapid system-wide expansion plan which is working to detriment of many of its existing smaller, "mom & pop" franchisees.

37.     Recently, Dunkin' has set its sights on the Detroit Market, announcing plans to increase its presence in that market by adding at least one hundred (100) new locations.

38.     Upon information and belief, Dunkin is actively seeking new franchisees to own and operate **a minimum of five (5) new restaurants** in Detroit, Flint and Lansing.[1]

39.     Dunkin' Donuts' Detroit launch is part of an aggressive national growth strategy, which includes expanding in existing markets while entering new cities throughout the country.

---

[1] *See,* http://findarticles.com/p/articles/mi_m4PRN/is_2008_March_18/ai_n24927715 (emphasis added).

T:\TGS\ALI-S\DUNKIN DONUTS\PLEADINGS\Verified Complaint.doc

40.     According to Lynette McKee ("McKee"), CFE, Vice President of Franchising with Dunkin', "To fulfill our national expansion goals, Dunkin' Donuts is looking for developers with a strong organization and the ability to manage multiple restaurants effectively and successfully in and around Detroit."[2]

41.     McKee has further stated: "Dunkin' Donuts will satisfy a growing demand in the Detroit area for high quality coffee and baked goods that are available all day," maintaining that Dunkin "look[s] forward to being a vibrant part of the community and playing an important role in the daily lives of the people who live and work in and around Detroit."[3]

42.     Dunkin' fails to disclose, however, that, upon information and belief, in light of the overwhelming failure rate of existing Dunkin' stores in the Detroit market, **its own analysts have declared Detroit an economically depressed market.**

43.     Upon information and belief, given the dismal market-wide performance of Detroit Dunkin' franchise stores, Dunkin' has placed every single existing franchisee in the Detroit Market on an "expansion hold" – prohibiting these franchisees from purchasing additional stores to grow their franchise networks.

44.     Clearly, the encroachment and cannibalism of sales that would result from the infusion of one hundred (100) new franchise stores into a market where all of the existing franchisees are already failing would be the death knell for those existing Dunkin' owners.

---

[2] *Id.*
[3] *Id.*

45.     Thus, by introducing one hundred (100) new stores into the depressed Detroit Market, and not allowing any of the existing franchisees to purchase any of those stores, or to unreasonably withhold consent to sell or transfer their stores, it is clearly Dunkin's intention to use its expansion plan as a means to force the exit of existing franchisees from the system.

46.     The perpetration of such a plan is both unlawful and in bad faith.


**Dunkin' Has Unreasonably Withheld Consent Permitting Detroit
Market Franchisees From Transferring Ownership of Their Franchise Stores**

47.     In furtherance of its plan to oust existing Detroit market franchisees from the system, Dunkin' has unlawfully withheld consent permitting Detroit franchisees, including Plaintiffs Ali and Patel, from transferring their stores to otherwise qualified purchasers.

48.     By unreasonably withholding consent and prohibiting existing Detroit franchisees from selling their Dunkin' stores, it is Dunkin's intention to beat the franchisees into financial submission, at which time Dunkin' will swoop down and take their stores for pennies on the dollar.

**A.     Dunkin' Unreasonably Withheld Consent and Would Not Permit Plaintiff
Ali to Transfer Ownership of His Dearborn Dunkin' Franchise Store**

49.     In or about May/June 2007, Plaintiff Salim Ali engaged in negotiations with Jay Oza ("Oza") a prospective purchaser, interested in buying Ali's Dearborn store (PC #340300).

50.     Upon information and belief, Oza was a "qualified purchaser," who met all of the criteria Dunkin' required of potential franchisees.

51.     Upon learning of the potential transaction, however, Mike Bruno, a member of Dunkin's franchise sales force, stepped in and interfered with the sale.

52.     Bruno advised Mr. Oza that he would not be permitted to purchase one store from Ali because Dunkin's new policy required him to purchase at least three stores as part of store development agreement ("SDA").

53.     Thereafter, in direct contradiction of his representations regarding Dunkin's policy, Bruno brokered a transaction permitting Oza to purchase a single franchise store from a Detroit franchisee named Chris Johnson ("Johnson").

54.     For a reason never explained to Plaintiff Ali, Bruno permitted Oza to waive the SDA requirement for purposes of consummating his transaction with Johnson.

**B.     Dunkin' Unreasonably Withheld Consent and Would Not Permit Plaintiff Patel to Transfer Ownership of His Southfield Dunkin' Franchise Store**

55.     In or about May of 2008, Plaintiff Patel had finalized negotiations for the sale of his Southfield Dunkin' franchise store (PC #336549) to Ashok Kuthiala.

56.     Once a contract of sale was prepared and executed, it was submitted to Dunkin' Brands for approval.

57.     Upon information and belief, the contract was approved by Dunkin' Brands agent Pat Miller.

58.     Thereafter, the buyer, Kuthiala, was instructed to meet with Rick Reuter and Steven Collins, Dunkin' employees who were responsible for franchise sales in the Detroit Market.

59.     During that meeting, Reuter and Collins expressly attempted to deter Kuthiala from purchasing Plaintiff Patel's Southfield franchise store.

60.     Specifically, Reuter and Collins told Kuthiala that he should purchase a new Dunkin' shop instead of Patel's Southfield store.

61.     Reuter and Collins went so far to tell Kuthaila that if he purchased Patel's store, he would immediately have to undertake a $400,000 remodel.  This information was provided in a deceptive and misleading way, with the intention to dissuade Kuthalia from consummating the transaction with Patel.

62.     Moreover, Reuter and Collins aggressively pushed Kuthalia to forego his agreement with Patel in favor of purchasing an SDA.

63.     Kuthailia insisted that he was only interested in purchasing one Dunkin' store at the time – and that he specifically wanted to purchase Patel's Southfield store.

64.     Curiously, a few days after the interview, Kuthailia received a letter from Dunkin' rejecting his proposed purchase of Patel's Southfield store.

65.     According to the letter, the sale was rejected because Kuthailia did not have enough experience in the food industry.

## COUNT I
## BREACH OF CONTRACT
(On Behalf of Plaintiffs Ali, SDI, Patel and SII)

66.     The allegations set forth in the preceding paragraphs are re-alleged as if fully set forth herein.

67.     Within each of the most recent versions of the franchise agreements executed by Plaintiffs Ali and Patel in connection with their various Dunkin' franchises, Section "10", titled "Transfer Provisions," uniformly sets forth the following:

> 10.1 **Transfer By FRANCHISEE**. FRANCHISEE understands and acknowledges that the rights and duties set forth in this Agreement are personal to FRANCHISEE and that FRANCHISOR has granted the Franchise in reliance on the business skill and experience, financial capacity and personal character of FRANCHISEE. Except as hereinafter provided, neither FRANCHISEE, nor any partner, if FRANCHISEE is a partnership, nor any member, if FRANCHISEE is a limited liability company ("LLC"), nor any shareholder, if FRANCHISEE is a corporation, without FRANCHISOR's prior written consent, shall, by operation of law or otherwise, sell, assign, transfer, convey, give away, pledge, mortgage or otherwise encumber to any person, persons, partnership, association, LLC or corporation, any interest in this Agreement, or any interest in the franchise granted hereby, or any interest in any proprietorship, partnership, LLC or corporation which owns any interest in the franchise, nor offer, permit or suffer the same. Any purported assignment or transfer not having the prior written consent of FRANCHISOR shall be null and void and shall constitute default hereunder. Any proposed transfer must meet all the requirements of FRANCHISOR including, but not limited to. those set forth in this Section 10.

> 10.2  **Consent By FRANCHISOR**. FRANCHISOR shall not unreasonably withhold its consent to any transfer referred to in paragraph 10.1 above, provided, that:

> 10.2.1 FRANCHISEE must have operated the Unit for a period of not less than six (6) months prior to the proposed transfer:

> 10.2.2  The sales price of the interest to be conveyed must not be so high, or the terms of sale so onerous, that, in the judgment of FRANCHISOR, the transferee will be unlikely to properly maintain, operate and promote the Unit and meet the transferee's financial and other obligations to FRANCHISOR, third party suppliers and creditors. This provision shall not create any liability to either transferor or transferee on the part of FRANCHISOR, in the event that FRANCHISOR approves the transfer and the transferee experiences financial difficulties;

10.2.3  The transferee and each partner, shareholder or member of the transferee, as the case may be, must be a United States citizen or lawful resident alien of the United States, must be of good moral character and reputation and must have a good credit rating and business qualifications and aptitude reasonably acceptable to FRANCHISOR. Such qualifications include, without limitation, literacy and fluency in the English language sufficient, in FRANCHISOR's opinion, to communicate with employees, customers. and suppliers of FRANCHISOR and to satisfactorily complete FRANCHISOR's required training program and such other tests and interviews as FRANCHISOR shall reasonably deem to be necessary or desirable. FRANCHISEE shall provide FRANCHISOR with such information as FRANCHISOR may require to make a determination concerning each proposed transferee; and

10.2.4  The transferee may not be a limited partnership, trust or other entity not specifically authorized herein.

68.     As detailed above, Dunkin' through its agent and employee Bruno, unreasonably withheld consent and prohibited Plaintiff Ali from selling his Dearborn Dunkin' franchise store.

69.     As detailed above, Dunkin' through its agents and employees Reuter and Collins, unreasonably withheld consent and prohibited Plaintiff Patel from selling his Southfield Dunkin' franchise store.

70.     The terms of Plaintiff Ali's proposed sale to Oza were in compliance with paragraphs 10.2.1–10.2.4 of their respective franchise agreements.

71.     The terms of Plaintiff Patel's proposed sale to Kuthalia were in compliance with paragraphs 10.2.1–10.2.4 of their respective franchise agreements.

72.     Dunkin' never provided Plaintiffs Ali and Patel with a viable reason for withholding consent and disallowing the transfer of their respective stores.

73.     Dunkin' only advised Plaintiff Ali that Dunkin's new policy precluded new franchisees in the Detroit Market, like Mr. Oza, from purchasing single Dunkin'

franchise stores; rather pursuant to Dunkin's purported "policy," new franchisees were required to purchase multiple franchise stores as part of an SDA.

74.     Dunkin' then, in direct contradiction of its purported policy, waived its SDA "requirement" and permitted Mr. Oza to purchase a single Dunkin' franchise store from Chris Johnson, another Detroit area franchisee.

75.     With respect to Plaintiff Patel, Dunkin' initially approved the sale of his Southfield store, only to rescind approval when the buyer would not submit to purchasing an SDA.

76.     Dunkin' purportedly based its rejection of the sale of Patel's Southfield store on the Mr. Kuthalia's lack of experience in the food industry.

77.     This was deceptive and unlawfully intrusive because on the one hand, while Dunkin' stated that Kuthalia lacked the experience to operate one franchise store, Dunkin' then attempted to sell Kuthalia multiple stores in the form of an SDA, for which they were seemingly willing to overlook his "inexperience."

78.     Dunkin' has breached the terms of the Dearborn franchise agreement by unreasonably withholding consent permitting Plaintiffs Ali and Patel to transfer their respective Dunkin' stores, in violation of paragraph 10.2 of said agreement.

79.     As a direct and proximate result of Dunkin's breach of the Dearborn and Southfield franchise agreements, Plaintiffs Ali and Patel suffered economic damages in amounts to be proven at trial.

**COUNT II**
**VIOLATION OF THE COVENANT**
**OF GOOD FAITH AND FAIR DEALING**
(On Behalf of Plaintiffs Ali, SDI, Patel, SII, and the DDFA)

80.     The allegations set forth in the preceding paragraphs are re-alleged as if fully set forth herein.

81.     Every agreement between Dunkin' and the Detroit Market franchisees, including Plaintiffs Ali and Patel, includes not only express written provisions, but also those terms and conditions, which although not formally expressed, are implied by law.

82.     Such implied terms are as binding as the terms that are actually written into the agreement.

83.     Inherent to all contracts is an implied covenant that the parties will act in good faith and deal fairly with each other in the performance of their respective covenants and obligations under the contract and will not take any action that will injure the other party or compromise his benefit of the contract.

84.     This duty to act in good faith has been applied to override a range of express termination clauses in franchise agreements.

85.     Dunkin' has a duty to exercise every discretionary power it has under the Franchise Agreements consistent with its implied duty of good faith and fair dealing, so as not to deprive Plaintiffs of the benefit of said Agreements.

86.     Notwithstanding Dunkin's technical contract rights, superior contracting power, and discretion to determine the aforementioned level of support and services to be provided to franchisees like Plaintiffs, the implied covenant of good faith and fair dealing prevents Dunkin' from depriving Plaintiffs of the benefits of their contracts.

87.     By these and other means, Dunkin' abused its discretionary authority, including its technical contract rights under the Franchise Agreements with Plaintiffs, and dealt (and continues to deal) with Plaintiffs in an arbitrary, capricious, and unfair manner.

88.     Dunkin's conduct as described herein constitutes a willful breach of its implied duty of good faith and fair dealing.

89.     Plaintiffs Ali and Patel reasonably expected that they would be permitted to sell their Dunkin' franchise stores at will, as long as the terms of such sales were in compliance with the terms of their respective franchise agreements.

90.     Plaintiffs Ali and Patel reasonably expected that Dunkin' would not unreasonably withhold consent and prohibit them from selling their respective franchise stores to qualified purchasers.

91.     Plaintiff DDFA, on behalf of its members and all of the Detroit market Dunkin' franchisees, reasonably expected that Dunkin' would not engage such in illicit, bad faith business practices as described above, as a means to oust the existing Detroit market franchisees from the Dunkin' system.

92.     Plaintiff DDFA, on behalf of its members and all of the Detroit market Dunkin' franchisees, reasonably expected that Dunkin' would not implement a plan to open one hundred (100) additional stores in the already economically depressed Detroit market.

93.     For the reasons set forth in this complaint, Dunkin' has deprived Plaintiffs Ali and Patel of their rights to receive the benefits under his Dearborn franchise agreement and therefore has breached the implied covenant of good faith and fair dealing.

94.    For the reasons set forth in this complaint, Dunkin' has deprived each of the Detroit Market franchisees, as represented by the DDFA, of their rights to receive the benefits under their respective franchise agreements and therefore has breached the implied covenant of good faith and fair dealing.

95.    As a direct and proximate result of Dunkin's intentional and material breaches of the Franchise Agreements, Plaintiffs have suffered substantial damages.

**COUNT III**
**TORTIOUS INTERFERENCE WITH A**
**PROSPECTIVE BUSINESS ADVANTAGE**
(On Behalf of Plaintiffs Ali, SDI, Patel and SII)

96.    The allegations set forth in the preceding paragraphs are re-alleged as if fully set forth herein.

97.    Plaintiff Ali's proposed sale of his Dearborn Dunkin' franchise store gave rise to the expectancy of a valid business relationship with Jay Oza, the potential purchaser.

98.    Dunkin', through its agent Mike Bruno, knew of Plaintiff Ali's expectancy of entering into a business relationship with Jay Oza.

99.    Dunkin', through its agent Mike Bruno, intentionally interfered with Plaintiff Ali's expected business relationship with Oza and induced a termination of that relationship.

100.    As a result of Dunkin's interference, Plaintiff Ali has suffered substantial financial damages.

101.    Plaintiff Patel's proposed sale of his Southfield Dunkin' franchise store gave rise to the expectancy of a valid business relationship with Mr. Kuthailia, the potential purchaser.

102.    Dunkin', through its agents Rick Reuter and Steven Collins, knew of Plaintiff Patel's expectancy of entering into a business relationship with Mr. Kuthailia.

103.    Dunkin' through its agents Reuter and Collins, intentionally interfered with Plaintiff Patel's expected business relationship with Mr. Kuthailia and induced a termination of that relationship.

104.    As a result of Dunkin's interference, Plaintiff Patel has suffered substantial financial damages.

### INJUNCTIVE RELIEF
(On Behalf of Plaintiff DDFA)

105.    The allegations set forth in the preceding paragraphs are re-alleged as if fully set forth herein.

106.    As a result of the foregoing, and because money damages are inadequate to fully compensate the Detroit market Dunkin' franchisees, represented for purposed of this action by the DDFA, or to prevent further instances of the future violations, preliminary and permanent injunctive relief is warranted as follows:

a.    Dunkin' shall be enjoined from carrying out its expansion plan for the Detroit Market, which includes, without limitation, the introduction of one hundred (100) new Dunkin' franchise stores; and

**WHEREFORE,** Plaintiff respectfully requests that the Court grant the following relief:

A.    For Plaintiffs Ali, SDI, Patel and SII assess damages on Counts I, II, and III, including pre- and post-judgment interest, and attorneys' fees and costs, and enter judgment on each such Count in the amount(s) so assessed; and

B.      For the DDFA, provide injunctive relief, enjoining Dunkin' from carrying
out its expansion plan for the Detroit Market alleged in the Complaint.

**MARKS & KLEIN, LLP**

/s/ David S. Paris
David S. Paris (03816)
Counsel for Plaintiffs
63 Riverside Avenue
Red Bank, NJ 07701
Telephone: (732) 747-7100
Facsimile:  (732) 219-0625
david@marksklein.com

**THAV, GROSS, STEINWAY & BENNETT, P.C.**

/s/ David L. Steinberg
David L. Steinberg (P32247)
David E. Einstandig (P47344)
Co-Counsel for Plaintiffs
30150 Telegraph Road, Suite 444
Bingham Farms, MI  48025
Telephone:  (248) 645-1700
Facsimile: (248) 645-8205
dsteinberg@thavgross.com

## <u>VERIFICATION</u>

STATE OF MICHIGAN      )
                                ) ss.
COUNTY OF OAKLAND    )

I, SALIM ALI, upon my oath depose and say:

I have read the allegations in the Verified Counterclaim and hereby affirm and attest to the truth of each and every allegation.

_____
SALIM ALI

Date: _July 2nd 2008_

The foregoing instrument was acknowledged before me this 2nd day of July, 2008 by SALIM ALI.

_____
Notary Public, State of Michigan
County of _Ooland_
My Commission Expires: _4-25-13_
Acting in the County of _Ooland_

*SIGNATURES CONTINUED ON NEXT PAGE*

T:\TGS\ALI-S\DUNKIN DONUTS\PLEADINGS\Verified Complaint.doc

STATE OF MICHIGAN       )
                        ) ss.
COUNTY OF OAKLAND       )

I, BHIKHABHAI PATEL, upon my oath depose and say:

I have read the allegations in the Verified Counterclaim and hereby affirm and attest as a Plaintiff and as a member of the Detroit Dunkin Donuts Franchisee Association, LLC, to the truth of each and every allegation.

_____
BHIKHABHAI PATEL

Date: _____

The foregoing instrument was acknowledged before me this 2nd day of July, 2008 by BHIKHABHAI PATEL.

_____

Notary Public, State of Michigan
County of _____
My Commission Expires: 4-21-13
Acting in the County of _____

## JURY DEMAND

Plaintiffs hereby demand a trial by jury, as to any and all issues herein to which they may be entitled to a trial by jury.


**MARKS & KLEIN, LLP**


/s/ David S. Paris
David S. Paris (03816)
Counsel for Plaintiffs
63 Riverside Avenue
Red Bank, NJ 07701
Telephone: (732) 747-7100
Facsimile:  (732) 219-0625
david@marksklein.com


**THAV, GROSS, STEINWAY & BENNETT, P.C.**


/s/ David L. Steinberg
David L. Steinberg (P32247)
David E. Einstandig (P47344)
Co-Counsel for Plaintiffs
30150 Telegraph Road, Suite 444
Bingham Farms, MI  48025
Telephone:  (248) 645-1700
Facsimile: (248) 645-8205
dsteinberg@thavgross.com